Morris H. Jacks, Morristown Operating Co., a corporation, Joseph J. Buchbinder, Irving Goldstein, Morris Smolen, Leo G. Justin and Jersey Theatre of Morristown, a corporation, complainants-respondents,

*v.*

Walter Reade, American Community Theatres Corporation, a corporation, Richard M. Huber, Frank S. Hirst, and Alan Lloyd Wolfe, executors of the will of Frank V. Storrs, deceased, defendants, and Morristown Theatre Holding Corporation, a corporation, defendant-appellant.

[Argued May 29th, 1940. Decided October 10th, 1940.]

*Mr. David T. Wilentz,* for the complainants-respondents.

*Messrs. Burnett & Trelease,* for the defendant-appellant.

Per Curiam.

This is an appeal from that part of an order of the Court of Chancery, made on the advice of Vice-Chancellor Buchanan, which denied the motion of the defendant Morristown Theatre Holding Corporation (hereinafter designated appellant), for the dissolution of the restraint *pendente lite.*

The learned vice-chancellor advised that the motion to strike the bill as well as the restraint should be held until the hearing of the cause.

The bill of complaint asks, among other things, for specific performance of certain contractual obligations on the part of the defendants and for certain *pendente lite* and permanent restraints, and alleges that the complainants owned or operated two moving picture theatre properties in Morristown, New Jersey, with rights over a third about to be opened, and as such operators, had the exclusive rights to produce on original production all the better pictures; that one Frank V. Storrs (hereinafter designated Storrs), a wealthy person of high business integrity, wholly owned, controlled and was president and general manager of appellant, which acquired another tract and erected thereon a moving picture theatre, known as the Community Theatre; that Storrs was also interested, with the defendant Walter Reade (hereinafter designated Reade) in the American Community Theatres Corporation (hereinafter designated Community Corp.), a corporation of the State of New York, of which Reade was president and general manager, and Reade and Storrs owned all the stock; that Reade and Storrs, in behalf of themselves (as individuals), and their corporations (as principals), proposed to complainants an arrangement "for the mutual and joint operation" of all the theatres owned or operated by the complainants and defendants in Morristown, and that on July 7th, 1937, the parties entered into a memorandum agreement (*Exhibit 1* attached to the bill) which was intended not only as a contract of the individuals but was also executed on behalf of their respective corporate principals; that from that time on, even though a more formal contract was in course of preparation, all the parties observed the conditions stated in *Exhibit 1;* that upon the completion of the drafting of the more formal contract (*Exhibit 2*), as provided for in *Exhibit 1,* the actual execution thereof was postponed by Reade under various pretexts, although the same was pronounced satisfactory to all parties concerned.

The bill further alleges that on March 8th, 1938, about two months after *Exhibit 2* was ready, Storrs died, whereupon

Reade in behalf of himself and Community Corp. in the effort to increase his own gains, inequitably and dishonestly attempted to repudiate for a fictitious reason the contracts, after the business had been diverted from complainants' theatres to the ones in which Reade and Storrs were interested; that there had been on the part of complainants a very substantial performance of both *Exhibit 1* and *Exhibit 2,* for a period of almost two years, during which the profitable business of complainants' theatres was diverted to the Community Theatre, which would not have happened but for the contracts and Reade's assurances, often repeated, that these contracts were in full force and effect, regardless of the informal execution of *Exhibit 1* and regardless of the fact that *Exhibit 2* had not actually been signed.

The bill further alleges that one of the inducing causes for the making of the memorandum contract was the representation by Storrs, on behalf of himself and appellant, that he had already made a lease, then still existing, of the Community Theatre property to the Community Corp. for twenty years at a very low rent and upon terms very advantageous to the latter company.

As stated by the vice-chancellor, it might well be inferred from the allegations of the bill that there was an implied contract by Storrs and appellant for the continuance of that lease on those terms for the period covered by *Exhibit 1* and to be covered by *Exhibit 2* (which would have greatly benefited complainants) ; and that such an implied contract would constitute a part of the contractual obligations which the bill seeks to have specifically enforced.

Upon the filing of the bill and supporting affidavit a rule to show cause was issued with restraint against Reade, the Community Corp. and appellant and each of their agents, &c., from doing or attempting to do any act by way of canceling or otherwise impairing any contract presently existing between said appellant, Community Corp. or Reade, relating to the use, management, operation and control of the Community Theatre property, with additional provisions permitting the parties to apply to dissolve or modify the restraint on notice.

Pursuant to such leave appellant moved to strike or dismiss the bill as against it on the ground that the bill disclosed no equitable ground of action and that if that motion was denied, then for an order dissolving the injunction upon the ground that the bill of complaint did not, by its allegations, support and warrant the issuance of the restraint and that it was unreasonable and unnecessary as to appellant.

Appellant's contention is that it was not a party to the informal contract (*Exhibit 1*) and that there is nothing upon which it may be held.

The proof, which is not controverted by appellant, is that Storrs was the complete owner of appellant and that when he signed the contract, he signed not only as an individual but in his representative capacity in control of the appellant corporation.

It is clear that there was a very close connection between appellant, owned solely by Storrs, with the Community Corp. owned entirely by Storrs and Reade. The former was the lessor corporation and the latter was the lessee, but there was identity of interest. Unless there were some restraint imposed pending the disposition of the main case (which sought among other things to compel the defendants to execute *Exhibit 2*), it would be a very simple matter for appellant to cancel or otherwise impair the lease which it made with Community Corp. This might cause complainants to suffer substantial and irreparable injury.

Vice-Chancellor Buchanan, in his conclusions, which are in the form of a letter to counsel, and not reported, very aptly stated the purpose of the restraint and his reason for denying the motion to dissolve the same, as follows:

"The interim restraint is solely for the purpose of having the *status quo* maintained—to have the parties compelled to continue the same course of operations that they had actually been maintaining for two or three years up until the attempt by Reade to repudiate the obligation under the contract. No showing was made or attempted to be made by the Morristown Theatre Holding Corporation, on the argument on its motion, that any prejudice or disadvantage would result, or would be likely to result to it from the maintenance of the interim restraint."

Our examination of the record leads us to the conclusion that the imposing of the restraint was well within the discretion of the court and that the motion to dissolve the same was properly denied.

The order is therefore affirmed, with costs.

*For affirmance*—THE CHIEF-JUSTICE, PARKER, CASE, BODINE, DONGES, HEHER, PERSKIE, PORTER, DEAR, WELLS, WOLFSKEIL, RAFFERTY, HAGUE, JJ. 13.

*For reversal*—None.